## THE CITY OF McLEANSBORO

v.

## ANNIE LAY.

*Municipal Corporations —Defective Sidewalk—Notice—Personal Injuries —Contributory Negligence—Instructions—Evidence.*

1.  Reasonable diligence must be used by a municipal corporation to keep its sidewalks, wherever located, in a reasonably safe condition.

2.  Notice will be presumed where a sidewalk has been out of repair a considerable length of time.

3.  In an action against a municipal corporation to recover for injuries suffered through a defective sidewalk, this court, upon a review of the evidence, declines to interfere with a verdict for the plaintiff.

[Opinion filed October 19, 1888.]

IN ERROR to the Circuit Court of Hamilton County; the Hon. C. C. BOGGS, Judge, presiding.

City of McLeansboro v. Lay.

Messrs. A. M. Wilson and T. B. Stelle, for plaintiff in error.

"So far as the question of notice to a city of defective sidewalk is concerned, the law is well settled that the city will not be held liable unless it has notice of the defective walks, or unless it has notice of such facts and circumstances as would, by the exercise of reasonable diligence, lead a prudent person to such knowledge." City of Chicago v. Murphy, 84 Ill. 224; City of Chicago v. Stearns, 105 Ill. 554.

A city is not always liable for an injury caused by a defective sidewalk. Notice of the defect must be shown, or circumstances from which it may be inferred. City of Peru v. French, 55 Ill. 318; City of Chicago v. Murphy, 84 Ill. 224.

It is the duty of a person walking on the sidewalk to use his eyes to direct his footsteps, and failing to do so is such negligence as to preclude a recovery. Village of Kewanee v. Depew, 80 Ill. 119; City of Quincy v. Barker, 81 Ill. 300.

A city is only required to keep its sidewalks in a reasonably safe condition. Rockford v. Hildebrand, 61 Ill. 155; Village of Gibson v. Johnson, 4 Ill. App. 288; Chicago v. McGiven, 78 Ill. 347; Gridley v. Bloomington, 88 Ill. 47; City of Quincy v. Barker, 81 Ill. 300; City of Bloomington v. Reed, 2 Ill. App. 542; Chicago v. Bixby, 84 Ill. 85; Grayville v. Whitaker, 85 Ill. 349.

A judgment will be reversed when the verdict is manifestly against the weight of the evidence. Reynolds v. Lambert, 69 Ill. 495; C., B. & Q. R. R. Co. v. Gregory, 58 Ill. 226; Smith v. Slocum, 62 Ill. 354; Chicago v. McCarthy, 75 Ill. 602; Rock Island v. Vanlandschoot, 78 Ill. 485.

It appears in evidence that the city used reasonable efforts to keep its sidewalks safe, and hence no recovery can be had. Chicago v. McGiven, 78 Ill. 347; Rockford v. Hildebrand, 61 Ill. 155; City of Quincy v. Barker, 81 Ill. 300; City of Gilman v. Haley, 7 Ill. App. 349.

Messrs. R. R. Barnett and Walker & Hails, for defendant in error.

Green, P. J. This was an action in case, brought to recover

damages for personal injuries, alleged to have resulted from
defendant's negligence in suffering its sidewalk to be and
remain in bad and unsafe repair, and the planks to remain
broken and unfastened, by means whereof plaintiff, in passing
along and upon said sidewalk, tripped and stumbled against
one of the unfastened planks, and was thereby thrown and fell
and received the injuries complained of. Issue was joined on
the plea of "not guilty." The cause was tried by a jury. A
verdict was rendered, finding defendant guilty and assessing
plaintiff's damages at $125. Defendant's motion for a new
trial was overruled and judgment entered on the verdict, to
reverse which defendant sued out this writ of error. It is
insisted on behalf of plaintiff in error, this judgment should
be reversed because plaintiff was not in the exercise of reason-
able care at the time she was injured, because improper remarks
were made by her attorney in addressing the jury, because
the court refused to give defendant's sixth instruction as
requested, and because the evidence did not establish the neg-
ligence charged. In our opinion, however, the judgment
ought not to be reversed for the causes mentioned, or any of
them.

By the testimony of plaintiff and her sister it is sufficiently
shown that at the time of the injury plaintiff was not guilty of
any negligence contributing thereto. It also appears, so soon
as objection was made to what was being said by plaintiff's
counsel in addressing the jury, he at once ceased the further
use of any objectionable remarks, and the small amount of
damages awarded indicate that the remarks which were made
had not created any considerable prejudice in the minds of
the jury against defendant.

The refused instruction reads as follows: "If you believe
from the evidence that the walk in question was in the out-
skirts or more sparsely settled part of the city, where the
travel was not frequent, then the city authorities would not be
held to the same degree of diligence in seeing that the walk
was secure, that they would if it were in the more densely
populated parts of the city, or along the more frequently
traveled thoroughfares."

This instruction was calculated to mislead the jury if given, and it was properly refused. The degree of diligence required of the city by the law in keeping its sidewalks on public streets in reasonably safe condition for the use of pedestrians, is not less in one part of a city than another. Reasonable diligence must be used in the performance of this duty with respect to all such sidewalks.

Upon the question of defendant's negligence as alleged, the evidence, as is usual in this class of cases, was conflicting. Defendant's witnesses give it as their opinion the walk was a good one and in good condition, but none of them were present at the time and place of the injury, and taking all their testimony together, the jury had reason to doubt the correctness of such opinion. One of these witnesses, the mayor, observed the condition of this walk but twice only; once about November 1, 1886, when his attention was called to its dangerous condition, caused by the earth being washed away from beneath it, and again between the 1st and 8th of November. On these occasions he says he observed no loose, broken or rotten planks in the walk.

Jones and Robinson, aldermen of the city and witnesses on its behalf, went together to examine this sidewalk in September, 1886. Jones said he saw where the earth had been washed out at the same place spoken of by the mayor, but did not see any other defect in the sidewalk, or any loose or broken planks. Robinson testified he noticed two or three loose planks in the walk on that occasion, but otherwise it was in good condition. From this it would appear that, although loose planks were in the walk, Jones did not notice them, and Robinson did, and Jones observed the dangerous condition of the walk where the earth was washed out, but Robinson, in company with him, with equal opportunity to see, did not observe it. These were the only examinations of this walk made by the city officials as shown by the record. Three of the remaining four of defendant's witnesses testify they saw loose planks in the walk in the fall of 1886. One of them also then observed rotten planks therein, and another on cross-examination admitted some of the planks he then saw there might have been

rotten. It' further appears that on November 6, 1886, when plaintiff, who had been on this walk but twice before, was accompanied by her sister and walking side by side with her, the sister stepped on a plank in this sidewalk, near its end next the street, and the other or inside end of the plank was thereby thrown up, tripping the plaintiff and causing her to fall and injure herself. Both these witnesses testify they saw the plank as it was thus thrown up, or immediately after, and the inside end of it was rotten. These witnesses were not impeached nor their testimony contradicted; it was shown also this sidewalk had been built two or three years before the injury to plaintiff; that it was constructed by laying stringers lengthwise with the street. On these, boards were nailed, with their ends projecting over the stringers, so that if two persons were walking together on the walk, and one stepped quicker than the other on one end of a board so laid, the other end of it would be thrown up if not securely fastened, and thereby trip the other person as the latter moved forward. The material used in constructing this sidewalk was partly lumber taken from an old sidewalk, and the balance new lumber.

Evidence was also introduced showing that old boards or rotten boards would not hold nails well, and that in August and September, 1886, in the walk in front of Millard's, where the plaintiff fell, there were loose boards, some of them rotten, and these were nailed down in October. One witness for defendant also testified the walk was old and shackly; that he usually walked in the middle of it, and if two persons walked on it side by side and any of the boards were loose they were liable to fly up. It further appears the city official, when a man was sent to repair this walk, directed him to nail down all loose boards. That this walk was out of repair at the time and place of injury, and the board which was thrown up and caused the injury was rotten at the end and therefore could not be securely fastened, we think was clearly proven, and that it had been in that condition a sufficient length of time for a reasonable diligence on the part of defendant to have discovered and remedied the defect with a new board, admits

of little doubt in the light of all the evidence. In addition to this, it appears this walk had been built a length of time sufficient for the city authorities to have learned how it was constructed, and the kind of material used, and under the circumstances no other notice of its condition would be necessary. Ordinary observation was sufficient to inform the city authorities that this walk, constructed as it was, and with such material as was used, might not be reasonably safe. The law imposed the duty upon defendant to keep this sidewalk upon its public street in a reasonably safe condition for persons to walk over, and when it got out of repair so that it was unsafe and insecure, and so remained for a considerable time, notice of its defective condition will be presumed. City of Chicago v. Dalle, 115 Ill. 386; City of Aurora v. Hillman, 90 Ill. 63; City of Springfield v. Doyle, 76 Ill. 202.

We are satisfied this case was fairly submitted to the jury under instructions stating the law very fully and clearly. The verdict was warranted by the evidence, and the judgment is affirmed.

*Judgment affirmed.*